IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GENOEVA PITTS and ISAAC PITTS,<br><br>    Plaintiffs,<br><br>  v.<br><br>BAYVIEW LOAN SERVICING, LLC<br>and ROBERT HALL,<br><br>    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>18-633 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

Genoveva Pitts
Isaac Pitts
44 Gravelly Hill Road
Bridgeton, NJ 08302
    Plaintiffs <u>Pro</u> <u>Se</u>

Francis X. Crowley, Esq.
BLANK ROME LLC
301 Carnegie Center
3rd Floor
Princeton, NJ 08540
    -and-
Matthew Michael Maher, Esq.
BLANK ROME LLC
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
    Attorneys for Defendants

**SIMANDLE**, District Judge:

I.    **INTRODUCTION**

    This case arises out of a foreclosure action involving a property located at 44 Gravelly Hill Road in Bridgeton, New

Jersey. In this matter, Plaintiffs Genoveva and Isaac Pitts (collectively, "Plaintiffs") filed suit against Defendants Bayview Loan Servicing ("Bayview") and its Vice President, Robert Hall ("Hall" and, collectively, "Defendants"), alleging claims to quiet title and recover damages due to common-law fraudulent misrepresentation and fraudulent concealment against Defendants. (See generally Plaintiffs' Complaint (hereinafter, "Compl.") [Docket Item 1].) Specifically, Plaintiffs contend, inter alia, that Defendants defrauded them in obtaining a foreclosure judgment in state court without disclosing to them the "dissolution" of Bayview in 2010. (Id.)

Notably, and as discussed below, the Complaint was filed shortly after two virtually-identical federal suits were dismissed by this Court, the latter of which was dismissed with prejudice. See Pitts v. Bayview Loan Servicing, LLC, 2018 WL 1151711, at *1 (D.N.J. Mar. 5, 2018); Pitts v. Bayview Loan Servicing, LLC, 2017 WL 2311664 (D.N.J. May 25, 2017).

Currently pending before the Court is Defendants' motion to dismiss for lack of subject matter jurisdiction under the Rooker-Feldman doctrine, because New Jersey's entire controversy doctrine bars Plaintiffs' claims, and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (See generally Defendants' Motion to Dismiss (hereinafter, "Defs.'s Mot.") [Docket Item 4].)

Plaintiffs have not opposed this dismissal motion. For the reasons discussed below, the Court will grant the motion to dismiss with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

On January 8, 2014, Bayview filed a foreclosure action against Plaintiff Genoveva Pitts and Godfrey Pitts (but not Isaac Pitts) in the Superior Court of New Jersey, Chancery Division, Salem County, Docket No F-000581-14 (hereinafter, "the Foreclosure Action"). (Compl., Ex. G.) Plaintiff had been in default on her mortgage for failure to make payments on the Note since November 2011. (Defs.'s Mot. at 5.) The Foreclosure Action was initiated by Bayview, the servicer of the mortgage loan, on behalf of the investor, Bank of America, N.A. ("BANA"). (Id.,

---

[1] The facts alleged are drawn from the Complaint, from public court documents, and from undisputedly authentic documents upon which Plaintiff explicitly relies in his Complaint. See In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). Because the Complaint is predicated upon the mortgage documents, correspondence between Defendants and Plaintiffs regarding the mortgage, and the foreclosure actions in state court, documents related to these matters submitted by both Plaintiffs and Defendants will be considered in connection with the pending motions to dismiss. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); see also Farah v. Lasalle Bank Nat'l Ass'n, 2016 WL 1162644, at *5–6 (D.N.J. Mar. 23, 2016) (stating that "records of the foreclosure action that are intrinsic to the complaint may be considered without converting a facial Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment") (citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)).

3

Ex. H.) Bayview subsequently replaced BANA and named Plaintiff Genoveva Pitts in the Foreclosure Action by the Superior Court's Order for Entry of Default dated April 29, 2016. (Id., Ex. G at 2.)

Plaintiff filed a voluntary petition for Chapter 7 bankruptcy with the U.S. Bankruptcy Court for the District of New Jersey on February 19, 2014 (hereinafter, the "Bankruptcy Action"), which automatically stayed the foreclosure proceedings. (Defs.'s Mot., Ex. F.) On October 1, 2014, the Bankruptcy Court issued a Discharge of Debtor Order, which discharged only Plaintiff Genoveva Pitts's personal liability of the Mortgage and Note. (Id.) The foreclosure action then resumed until November 10, 2016, when the Superior Court entered final judgment in favor of Bayview in the sum of $233,042.42 (hereinafter, "the Final Foreclosure Judgment"). (Compl., Ex. H.)

On July 20, 2016, Plaintiff Genoveva Pitts filed her first federal action against Defendant Bayview (but not Defendant Hall), alleging that Bayview violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., on five occasions between January 20, 2016 and May 20, 2016. See Pitts v. Bayview, No. 16-4501-JBS-AMD (D.N.J. filed on July 20, 2016). Bayview filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff did not oppose. On May

25, 2017, the Court dismissed Plaintiff's claims after finding she "fail[ed] to allege adequately in what respect the communications at issue violated any specific provision of the FDCPA." See Pitts, 2017 WL 2311664, at *2-3.

Ten days later, on June 5, 2017, Plaintiff Genoveva Pitts filed a second complaint in federal court. Pitts v. Bayview, No. 17-3990-JBS-KMW (D.N.J. filed on June 5, 2017). Again, Plaintiff Genoveva Pitts raised violations of the FDCPA based on "written communications" she stated were sent by Bayview's foreclosure accounting firm, Pheland Hallinan, whom Plaintiff Genoveva Pitts also named as a Defendant. Defendants Bayview and Phelan Hallinan filed a motion to dismiss, which Plaintiff Genoveva Pitts did not oppose, and the Court granted the motion to dismiss **with prejudice** on March 5, 2018. See Pitts, 2018 WL 1151711, at *5 (emphasis added).

Plaintiffs filed the present Complaint on January 17, 2018.[2] [Docket Item 1.] The Complaint seems to be premised on four theories: 1) Bayview lacked standing to foreclose on Plaintiffs because the February 20, 2015 Assignment of Mortgage to Bayview was void (Compl. at ¶¶ 9-24); (2) "fraudulent misrepresentation" of the fact that Defendant Hall was Vice President of Bayview

---

[2] The following day, Plaintiffs submitted yet another complaint involving the same allegations as those alleged here in state court. (Defs.'s Mot., Ex. K.)

5

Assignment at the time Bayview Assignment was dissolved in 2010 (id. at ¶¶ 33-54); (3) "fraudulent concealment" against Defendant Bayview for violating its legal obligation to disclose to Plaintiff that Bayview Assignment was executed by a "dissolved entity" (id. at ¶¶ 66-80); and (4) a claim to quiet the title to the property based on the aforementioned allegations, for which Plaintiffs deem the assignment of Mortgage "invalid" because Bayview is "not in possession of the original Note" and the "Mortgage is null and void." (Id. at ¶¶ 81-92.)

Thereafter, Defendants filed a motion to dismiss the Complaint [Docket Item 4], thereby effectively waiving service pursuant to Fed. R. Civ. P. 4(h). As in the prior two federal actions, Plaintiffs have, again, not opposed this motion.

**III. STANDARD OF REVIEW**

Defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). An attack on subject matter jurisdiction can be either facial—based solely on the allegations in the complaint—or factual—looking beyond the allegations to attack jurisdiction in fact. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Where the challenge to subject matter jurisdiction is facial, the court must take all the allegations in the complaint to be true and construe them in the light most favorable to the

Plaintiffs. Id. However, when the Rule 12(b)(1) motion is a factual attack, such as here, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. Further, a Court may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists when a factual attack to a pleading is made. See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (citations omitted).

Under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (internal citations omitted). In applying this standard to pro se pleadings and other submissions, as here, the Court must liberally construe the well-pleaded allegations, and draw all reasonable inferences in favor of the pro se litigant. Higgs v. Attorney Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011); Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184 (3d Cir. 2009). Despite this liberality, however, a pro se complaint must still "contain sufficient factual matter, accepted as

true," to "state a [plausible] claim to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Marley v. Donahue, 133 F. Supp. 3d 706, 714 (D.N.J. 2015) (explaining the same concept).

**IV. DISCUSSION**

In the motion to dismiss, Defendants argue that Plaintiffs' claims should be dismissed because: 1) the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine; 2) that the claims are barred by New Jersey's entire controversy doctrine; and 3) that Plaintiff has failed to allege any claims against the Defendant. (See generally Defs.'s Mot.) For the reasons explained herein, the Court finds that the Rooker-Feldman doctrine or, in the alternative, the New Jersey entire controversy doctrine bar this federal action and will, again, dismiss the Complaint with prejudice. Since Plaintiffs' claims cannot proceed on these bases, the Court declines to address Defendants' other arguments for dismissal.

**A. The Rooker-Feldman Doctrine Precludes Plaintiffs From Bringing the Present Claims**

Defendants first argue that the Rooker-Feldman doctrine precludes this Court's exercise of subject matter jurisdiction over Plaintiffs' present claims. (See Defs.'s Mot. at 11-13.)

8

"[U]nder what has come to be known as the Rooker-Feldman doctrine, federal courts, other than the United States Supreme Court, are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006). The doctrine applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Id. at 466. For the Rooker-Feldman bar to apply, four requirements must be met: (1) the federal plaintiff must have lost in state court; (2) the plaintiff complains of injuries caused by state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Great W. Mining, 615 F.3d 159, 166 (3d Cir. 2010) (quotation omitted). In short, pursuant to Rooker-Feldman, a plaintiff may not seek relief in federal court if such relief "would prevent a state court from enforcing its orders." In re Knapper, 407 F.3d 573, 581 (3d Cir. 2005).

As discussed above, the Complaint generally alleges that Defendants defrauded Plaintiffs in obtaining a foreclosure judgment in state court without disclosing to them the "dissolution" of Bayview in 2010, among other things. (See generally Compl.) As relief, Plaintiffs request from this Court a judgement invalidating the assignment of the mortgage on June 29, 2015 and "forever awarding Plaintiffs immediate possession

of premises located at 44 Gravelly Hill Road," along with $233,042.42 (i.e., the amount the Superior Court determined that Plaintiffs owed **to** Defendant Bayview in the Final Foreclosure Judgment) and treble damages against Defendants for fraudulent misrepresentation and fraudulent concealment. (Id. at 11.) In other words, the only "injury" Plaintiffs allege is the loss of Plaintiffs' home, which could not have occurred but for the Final Foreclosure Judgment issued by the Superior Court.

All four elements of the Rooker-Feldman doctrine are present here: (1) a Final Foreclosure Judgment was entered by the Superior Court on November 10, 2016; (2) all of the injuries alleged by Plaintiffs, including the foreclosure and subsequent loss of their property, directly resulted from the Final Foreclosure Judgment itself; (3) the Final Foreclosure Judgment was entered more than one year prior to the filing of this suit; and (4) Plaintiffs are clearly inviting this Court to collaterally review (and reject) the Superior Court's decisions in the Foreclosure Action and set aside the Final Foreclosure Judgment.

In sum, Plaintiffs ask this Court to overturn or negate the Final Foreclosure Judgment issued by the Superior Court, Chancery Division, Salem County. This is plainly barred by the Rooker-Feldman doctrine. See Otto v. Wells Fargo Bank, N.A., 693 F. App'x 161, 163 (2017) ("To the extent that [the plaintiff's]

complaint can be read to include a request for the District Court to overturn or negate the state court judgment of foreclosure, we agree that the Rooker-Feldman doctrine bars the suit.") (citing In re Madera, 586 F.3d 228, 232 (3d Cir. 2009); In re Knapper, 407 F.3d at 581).

**B. The New Jersey Entire Controversy Doctrine Bars Plaintiffs' Claims**

In the alternative, the Court finds that, even if the Rooker-Feldman did not bar Plaintiffs' claims, the entire controversy doctrine applies to this federal action. New Jersey's entire controversy doctrine is closely related to res judicata. See Rycocline Prods., Inc. v. C&W Unlimited, 109 F. 3d 883, 889 (3d Cir. 1997). The doctrine, codified in Rule 4:30A of the New Jersey Court Rules, "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court." Cogdell v. Hosp. Ctr. at Orange, 560 A.2d 1169, 1172 (N.J. 1989). The doctrine requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy or be forever barred from bringing a subsequent action involving the same underlying facts. See Paramount Aviation Corp. v. Agusta, 178 F.3d 132 (3d Cir. 1999) (New Jersey's entire controversy doctrine "requires adversaries to join all possible claims stemming from an event

or series of events in one suit."). The doctrine applies in federal courts where there was a previous state-court action involving the same transaction. See Rycoline, 109 F.3d at 887.

The application of the entire controversy doctrine turns on three criteria: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Watkins v. Resorts Int'l Hotel and Casino, Inc., 591 A.2d 592, 599 (N.J. 1991)). "It is [a] commonality of facts, rather than the commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine." DiTrolio v. Antiles, 662 A.2d 494, 504 (N.J. 1995). Importantly, the doctrine "bars not only claims that were brought in the previous action, but also claims that could have been brought." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). The New Jersey entire controversy doctrine is intended to preclude a party from "withhold[ing] part of a controversy for separate litigation even when the withheld component is a separate and independently cognizable cause of action." Maertin v. Armstrong World Indus. Inc., 241 F. Supp. 2d 434, 456 (D.N.J. 2002) (quoting Paramount Aviation, 178 F.3d at 137).

With respect to foreclosure actions, specifically, the entire controversy doctrine requires that all "germane" claim must be joined in the first action or they are forever barred. N.J. Ct. R. 4:64-5. "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." In re Mullarkey, 536 F.3d at 229. In other words, any claim challenging the foreclosure-plaintiff's "right to foreclose" is "germane" to a foreclosure action and must be raised there. Sun NLF Ltd. v. Sasso, 713 A.2d 538, 540 (N.J. App. Div. 1988). Thus, New Jersey Rule 4:65-5 and the entire controversy doctrine encompass all statutory, common law, and constitutional claims relating to a foreclosure action and the underlying mortgage or tax transaction that led to the foreclosure. Bembry v. Twp. of Mullica, 2017 WL 3033126, at *3 (D.N.J. July 17, 2017).

Here, Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, and/or quiet title are barred by New Jersey's entire controversy doctrine because the underlying allegations are "germane" to the foreclosure of the Ms. Pitts' property, and Plaintiffs were required to raise these claims in the Foreclosure Action. Cf. Coleman v. Chase Home Finance, LLC, 446 F. App'x 469, 472-73 (3d Cir. 2011) (affirming dismissal of

13

plaintiff's complaint, which included breach of contract and New Jersey Consumer Fraud Act ("NJCFA") claim); Willoughby v. Zucker, Goldberg & Ackerman, LLC, 2014 WL 2711177 at *5 (D.N.J. June 16, 2014) (holding that plaintiff's FDCPA, NJCFA and conversion claims were germane to the prior foreclosure action and could have been raised during that proceeding); Patetta v. Wells Fargo Bank, No. 09-2848, 2010 WL 1931256 at *11 (D.N.J. May 13, 2010) (holding that fraud, breach of contract, and NJCFA claims are germane to a foreclosure action). In sum, Plaintiffs' present claims sounding in fraud and quiet title are barred by the New Jersey entire controversy doctrine because they could have been raised in the state-court foreclosure action.

Moreover, the parties in this action are identical to or in privity with the parties in the Superior Court foreclosure action. Plaintiff Isaac Pitts is described in the Complaint as a resident of the foreclosed property and purportedly "the heir to the real property." (Compl. at ¶2.) Isaac Pitts claims no separate justiciable interest in the outcome of this case. He was not a debtor on the underlying loan, is not a party to the mortgage, and does not claim to be an owner of the foreclosed property. (Defs.'s. Mot., Ex. A.). For purposes of the entire controversy doctrine, Isaac Pitts is in privity with Genoveva Pitts and is equally barred from raising claims concerning the validity of the foreclosure and rights associated with the

foreclosure.[3] Likewise, naming Robert Hall, a Bayview Vice-President, as a defendant does not transform Plaintiffs' claims because Hall is clearly in privity with Bayview and is, therefore, protected from this serial litigation to the same extent as Bayview.

For all these reasons, this case presents a textbook example of an action barred by New Jersey entire controversy doctrine, and Defendants' motion will be granted.

---

[3] If, on the other hand, one were to assume that Isaac Pitts is not in privity with Genoveva Pitts on the prior judgment, then it would be apparent that Isaac Pitts lacks standing to bring the claims here, as argued by Defendants. (Defs.' Br. at 15.) The doctrine of standing requires that a plaintiff must show: (1) an "injury in fact;" (2) "a causal connection between the injury and the conduct complained of;" and (3) that the injury will "likely" be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Id. at 560.

Again, Isaac Pitts was not a debtor on the underlying loan, is not a party to the mortgage, and does not claim to be an owner of the foreclosed property. The Complaint does not allege any facts demonstrating what interactions, if any, Isaac Pitts had with Defendants, or how he relied upon Defendants' allegedly fraudulent representations, or how, specifically, he was harmed by Defendants' allegedly fraudulent conduct separate and apart from his purported status as the "heir to the real property". (Compl. at ¶ 2.) There is no allegation that he inherited this property as an heir at any time, but especially prior to the Final Foreclosure Judgment. Thus, he cannot show he has suffered any "injury in fact" as an heir, and he lacks standing.

**C. Other Possible Bases for Dismissal**

Because the Court finds that the entire controversy doctrine applies, the Court declines to reach Defendant's other arguments for dismissal. Cf. Destefano v. Udren Law Offices, P.C., 2017 WL 2812886, at *5 (D.N.J. June 29, 2017) (declining to reach other possible bases for dismissal after finding that plaintiff's claim was time-barred).

**V. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion to dismiss. Because amending the Complaint could not overcome the Rooker-Feldman or entire controversy doctrines, any amendment would be futile. See Mason v. US Bank, 2016 WL 7189828, at *6 (D.N.J. Dec. 12, 2016). Accordingly, the dismissal will, again, be **with prejudice**. The accompanying Order shall be entered.

**November 29, 2018**　　　　　　　　_s/ Jerome B. Simandle_
DATE　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　U.S. District Judge